IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DONNA MARIE M.,**[1]                         3:17-cv-01540-BR

       **Plaintiff,**                   **OPINION AND ORDER**

**v.**

**Commissioner, Social
Security Administration,**

       **Defendant.**

**MERRILL SCHNEIDER**
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, OR 97293
(503) 255-9092

       Attorneys for Plaintiff

---

[1] In the interest of privacy and pursuant to the recommendation of the Judicial Conference of the United States, this Opinion and Order uses only the first name and the initial of the last name of the nongovernmental parties. The same designation will be used to identify nongovernmental family members named in this case.

1 - OPINION AND ORDER

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**HEATHER L. GRIFFITH**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3709

Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Donna Marie M. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for DIB on November 22, 2013,

alleging a disability onset date of October 18, 2013.  Tr. 144.[1]
The application was denied initially and on reconsideration.  An
Administrative Law Judge (ALJ) held a hearing on April 19, 2016.
Tr. 36-52.  Plaintiff was represented at the hearing.  Plaintiff
and a vocational expert (VE) testified.

The ALJ issued a decision on May 20, 2016, in which he found
Plaintiff is not disabled and, therefore, is not entitled to
benefits.  Tr. 18-35.  Pursuant to 20 C.F.R. § 404.984(d), that
decision became the final decision of the Commissioner on
July 29, 2017, when the Appeals Council denied Plaintiff's
request for review.  Tr. 1-7.  *See Sims v. Apfel*, 530 U.S. 103,
106-07 (2000).

## BACKGROUND

Plaintiff was born on April 9, 1962, and was 54 years old at
the time of the hearing.  Tr. 144.  Plaintiff has two associate's
degrees.  Tr. 41.  Plaintiff has past relevant work experience as
a flagger, bartender, bus driver, security guard, and
environmental-cleanup worker.  Tr. 49.

Plaintiff alleges disability due to melanoma cancer, back
injury, neck injury, and depression.  Tr. 54.

Except when noted, Plaintiff does not challenge the ALJ's

---

[1] Citations to the official transcript of record filed by
the Commissioner on November 15, 2017, are referred to as "Tr."

summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 27-29.

### **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11

(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially

dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a

week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

### **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff did not engage in

7 - OPINION AND ORDER

substantial gainful activity after her October 18, 2013, alleged onset date. Tr. 23.

At Step Two the ALJ found Plaintiff has the severe impairments of "status post amputation of tip of right thumb," obesity, and depression. Tr. 23. The ALJ found Plaintiff's impairments of neck and shoulder pain, left-leg deep vein thrombosis (DVT), hypertension, and "decreased aeration at the bilateral bases of her lungs" are not severe. Tr. 24.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 24. The ALJ found Plaintiff has the RFC to perform medium work with the following limitations: Plaintiff can frequently "perform fine fingering/feeling with the dominant right hand," can occasionally "perform postural activities," can perform work "with a specific vocational preparation (SVP) of 2 or lower," and "should avoid extremes of temperature and pulmonary irritants." Tr. 26.

At Step Four the ALJ found Plaintiff can perform her past relevant work as a flagger. Tr. 29.

At Step Five the ALJ found, in the alternative, that Plaintiff can perform the jobs of laundry worker and rack loader that exist in significant numbers in the national economy. Tr. 30. Accordingly, the ALJ found Plaintiff is not disabled

**DISCUSSION**

Plaintiff contends the ALJ erred when he (1) gave "little weight" to part of the opinion of examining physician Scott Thomas, D.O., and (2) found Plaintiff could perform her past relevant work as a flagger and/or found Plaintiff could perform the jobs of laundry worker and rack loader.

**I. The ALJ did not err when he gave "little weight" to portions of Dr. Thomas's opinion.**

Plaintiff asserts the ALJ erred when he gave little weight to those portions of the April 2014 opinion of Dr. Thomas relating to Plaintiff's limitations in handling, fingering, and feeling with her left and right hands.

An ALJ may reject an examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). When the medical opinion of an examining physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

On April 12, 2014, Dr. Thomas examined Plaintiff and

completed a medical-source statement. Dr. Thomas opined Plaintiff can walk and/or stand for six hours in an eight-hour workday; can sit for six hours for in an eight-hour workday; can occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds; can frequently kneel, crawl, and reach; can handle, finger, and feel with her upper left extremity; can occasionally climb steps, stairs, ladders, scaffolds, and ropes; can occasionally stoop, crawl, and handle, finger, and feel with her right upper extremity "based on her partially amputated right thumb"; and should avoid "extremes of temperatures and chemicals" as well as dust, fumes, gases, and pulmonary irritants. Tr. 258-59.

The ALJ gave great weight to Dr. Thomas's opinion as to Plaintiff's ability to sit, to stand, to lift, to carry, to climb, and to stoop. The ALJ gave less weight to Dr. Thomas's opinion as to Plaintiff's ability to kneel and to crawl. Specifically, the ALJ noted "in light of [Plaintiff's] obesity, I find that a limitation to occasional kneeling and crawling better reflects [Plaintiff's RFC]." Tr. 28.

The ALJ gave "little weight" to Dr. Thomas's opinion that Plaintiff could frequently handle, finger, and feel with her left upper extremity and could occasionally handle, finger, and feel with her right upper extremity. The ALJ noted Plaintiff testified at the April 19, 2016, hearing that she did not have

10 - OPINION AND ORDER

any problems with her left hand and that the record did not reflect any such complaints. The ALJ gave "more weight to [Plaintiff's] testimony tha[n] Dr. Thomas' [*sic*] opinion regarding her left hand functioning." Tr. 29.

The ALJ found Plaintiff could frequently handle, finger, and feel with her right hand. The ALJ noted Dr. Thomas reported during his examination that Plaintiff's thumb "function[ed] with normal opposition." Tr. 257. Dr. Thomas did not find any "evidence of localized tenderness, erythema, . . . effusion [. . . ,] diminution of function with repetition[, or . . .] spasticity or ataxia." Tr. 257. Dr. Thomas noted Plaintiff had "slightly decreased" sensation to touch in her right thumb, but her right-hand grip strength was "5-/5." Tr. 257-58. The ALJ also noted Plaintiff's treating surgeon, William Wood, M.D., reported on August 5, 2013, three weeks after Plaintiff's right-thumb surgery, that her progress was "excellent" and that Plaintiff reported she was "happy with the way her treatment has gone." Tr. 278. In addition, the ALJ noted Plaintiff attended three physical-therapy sessions after surgery, but she cancelled her remaining appointments and did not reschedule. Finally, the ALJ noted Plaintiff received "fairly regular" medical treatment, but her records from September 2014 to January 2016 do not contain any mention of hand or thumb problems.

On this record the Court concludes the ALJ did not err when

he gave little weight to that portion of Dr. Thomas's opinion as to Plaintiff's ability to handle, to finger, and to feel with her left and right hands because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

**II. Steps Four and Five**.

As noted, Plaintiff alleges the ALJ erred at Step Four when he found Plaintiff could perform her past relevant work as a flagger or, in the alternative, erred at Step Five when he found Plaintiff could perform other jobs as a laundry worker or rack loader.

**A. Step Four**.

At Step Four the ALJ found Plaintiff could perform her past relevant work as a flagger.

At Step Four the burden remains on Plaintiff to establish that she does not retain the RFC to perform work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

At the April 19, 2016, hearing the ALJ asked the VE to consider a claimant who can do work at the medium exertional level with occasional "postural activities" and "limited to fine fingering and feeling with her right hand . . . frequently; who

should avoid extremes of temperature and pulmonary irritations;
[and] who is limited to unskilled work consistent with SVP 2 or
lower." Tr. 49. The VE testified such an individual could
perform Plaintiff's past relevant work as a flagger. The VE
stated his testimony was consistent with the DOT. The ALJ relied
on the VE's testimony and found Plaintiff can perform her past
relevant work as a flagger.

Plaintiff contends the ALJ erred when he reached his
conclusion because a flagger "[c]ontrols movement of vehicular
traffic through construction projects[,] . . . [d]irects movement
of traffic through site, using sign, hand, and flag signals[,]
. . . [and w]arns construction workers when [an] approaching
vehicle fails to heed signals to prevent accident and injury to
workers." U.S. Dep't of Labor, *Dictionary of Occupational Titles*
372.667-022 (4th ed. 1991). According to Plaintiff, therefore,
pursuant to the DOT a flagger is necessarily exposed to dust,
fumes, and other pulmonary irritants generated by construction
and traffic. To support her assertion Plaintiff notes the United
States Department of Labor publication *Selected Characteristics
of Occupations Defined in the Revised Dictionary of Occupational
Titles* (SCO) reflects flaggers are constantly exposed to "outside
atmospheric conditions" and loud noise and frequently exposed to

13 - OPINION AND ORDER

"other environmental conditions."[2] DOT, App'x D and 05.12.20. The ALJ found Plaintiff must avoid pulmonary irritants, and, according to Plaintiff, the VE's testimony, therefore, "appears to conflict with the DOT description of the occupation." The ALJ, however, did not identify or resolve this conflict.

When determining whether a claimant can perform her past relevant work, "the ALJ may rely on an impartial vocational expert to provide testimony." *Gutierrez v. Colvin*, 844 F. 3d 804, 807 (9th Cir. 2016)(citing *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012)).

> The [DOT], a resource compiled by the Department of Labor that details the specific requirements for different occupations, guides the analysis. If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled.

*Id*. at 808 (citation omitted). "[N]ot all potential conflicts between [a VE's] job suitability recommendation and the [DOT's] listing . . . for an occupation will be apparent or obvious."

---

[2] The SCO defines other environmental conditions: "These may include, but are not limited to, such settings as demolishing parts of buildings to reach and combat fires and rescue persons endangered by fire and smoke; mining ore or coal underground; patrolling assigned beat to prevent crime or disturbance of peace and being subjected to bodily injury or death from law violators; diving in ocean and being subjected to bends and other conditions associated with high water pressure and oxygen deprivation; patrolling ski slopes prior to allowing public use and being exposed to danger of avalanches." U.S. Dep't of Labor, *Dictionary of Occupational Titles*, App'x D at ¶ 14.

*Id*. "For a difference between an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent. This means . . . the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Id*.

Although Plaintiff asserts the VE's testimony appears to be in conflict with the DOT, the Court concludes such conflict, if any, is not obvious or apparent. The DOT listing for flagger specifically states the occupation of flagger does not include exposure to extreme heat or cold, toxic caustic chemicals, or atmospheric conditions. In addition, the DOT does not include a characterization of the level of pulmonary irritants in individual jobs.

On this record the Court concludes Plaintiff has not established any apparent or obvious conflict between the VE's testimony and the DOT. Accordingly, the Court concludes the ALJ did not err when he relied on the VE's testimony and found Plaintiff can perform her past relevant work as a flagger.

**B.    The ALJ erred in part at Step Five.**

The ALJ made an alternative finding at Step Five that Plaintiff can also perform the jobs of laundry worker and rack loader.

**1.    Laundry Worker**

At the hearing the VE testified a claimant with

Plaintiff's RFC could perform the job of laundry worker (DOT Code 361.685-018). DOT 361.685-018 defines the job of laundry worker as follows:

> Tends laundering machines to clean articles, such as rags, wiping cloths, filter cloths, bags, sacks, and work clothes: Loads articles into washer and adds specified amount of detergent, soap, or other cleaning agent. Turns valve to fill washer with water. Starts machine that automatically washes and rinses articles. Lifts clean, wet articles from washer and places them successively into wringers and driers for measured time cycles. Sorts dried articles according to identification numbers or type. Folds and places item in appropriate storage bin. Lubricates machines, using grease gun and oil can. May dissolve soap granules in hot water and steam to make liquid soap. May mend torn articles, using needle and thread. May sort and count articles to verify quantities on laundry lists. May soak contaminated articles in neutralizer solution in vat to precondition articles for washing. May mix dyes and bleaches according to formula, and dye and bleach specified articles.

The SCO provides the job of laundry worker requires frequent exposure to extreme heat. DOT, App'x D 06.04.35. Plaintiff, however, points out that the hypothetical the ALJ gave to the VE included "should avoid extremes of temperature." Tr. 49. The VE's testimony, therefore, appears to conflict with the DOT and the SCO. The ALJ did not identify or explain this conflict.

Defendant does not address Plaintiff's argument regarding the ALJ's finding that Plaintiff could perform the job of laundry worker, and the record does not support such a finding. Accordingly, the Court concludes the ALJ erred at Step

Five when he found Plaintiff could perform the job of laundry worker. As noted, however, this finding was in the alternative to the ALJ's finding at Step Four, which the Court has concluded was not in error. The Court, therefore, concludes the ALJ's finding regarding Plaintiff's ability to perform work as a laundry worker is harmless error.

    **2. Rack Loader**

At the hearing the VE testified a claimant with Plaintiff's RFC could perform the job of rack loader "DOT Code 590.287-018." Plaintiff, however, points out that the DOT does not contain any occupation with DOT Code 590.287-018. The DOT identifies two occupations as rack loader: The first is rack loader I, DOT Code 529.686-074, which is a heavy occupation in the tobacco industry, and the second is rack loader (fabrication), DOT Code 590.687-018, which is a medium occupation in the fabrication industry that loads felt-base floor coverings onto oven racks for drying. According to Plaintiff, the ALJ erred when he failed to identify or to resolve the erroneous DOT code provided by the VE, and, "[w]ithout some reassurance that the VE's job numbers were based on [the rack loader (fabrication)] occupation, the ALJ was not justified in relying on the VE's testimony . . . that this occupation includes a significant number of jobs." Pl.'s Brief at 11.

Defendant concedes the VE incorrectly identified

the DOT code for rack loader as 590.**2**87-018 rather than 590.**6**87-018, but Defendant asserts the error was a harmless scrivener's error. Specifically, Defendant points out that it is apparent from the context of the VE's testimony that the VE was testifying about the medium-level rack-loader job and merely misspoke (or perhaps the court reporter misheard). The VE testified about the hypothetical claimant's ability to do the rack-loader job, its SVP, and its level (medium rather than heavy).

On this record the Court concludes the mis-identification of the rack-loader occupation by the VE as DOT Code 590.287-018 was, at most, harmless error.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 4th day of September, 2018.

                              Anna J. Brown

                              ANNA J. BROWN
                              United States Senior District Judge